UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BERNARDO CARTER,

    Petitioner,

v.                                                             Civil Action No. 10-11320
                                                             Honorable Thomas L. Ludington

LLOYD RAPELJE,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND DECLINING TO GRANT LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Petitioner Bernardo Carter, a state prisoner, sexually assaulted his stepdaughter. She was 14. He agreed to plead guilty to a single count of first-degree criminal sexual conduct. It was not his first conviction for sexual abuse of a child. Pursuant to the plea agreement, he was sentenced to 10–25 years incarceration.

Through counsel, Petitioner now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The gravamen of the petition is that his trial counsel was ineffective because he did not inform Petitioner that the plea agreement's term of imprisonment exceeded the state's minimum sentencing guidelines range.

For the reasons detailed below, the petition will be denied. Briefly, the plea agreement's term did not exceed the minimum guidelines range. The trial court concluded that Petitioner's actual minimum guidelines range was 81–168 months. (And that determination, one of state law, is not cognizable on habeas review.) The minimum sentence imposed was 120 months, which is in the middle of that range.

-2-

Thus, had trial counsel informed Petitioner that the plea agreement's term exceeded the guidelines range (as Petitioner posits) he would have misled Petitioner. There is no constitutional right to have counsel misinform the client about the applicable sentencing guidelines, however pleasant that misinformation may sound on first hearing. Trial counsel's not misrepresenting the applicable sentencing guidelines was *effective* assistance of counsel, not the converse. The petition will be denied.

## I

This case began, as noted, when Petitioner sexually assaulted his step-daughter. He was charged with three counts of criminal sexual conduct (one first-degree, two second-degree). He also was charged with being a habitual offender, second offense.

### A

The case was assigned to the Honorable Craig Strong. On the day trial was set to begin, Petitioner entered into a plea agreement with the prosecution. The prosecution agreed to dismiss the two counts of second-degree criminal sexual conduct and the habitual-offender sentencing enhancement. In exchange, Petitioner agreed to plead guilty to first-degree criminal sexual conduct. There was a sentence agreement of 10–25 years. The parties then brought the agreement to the attention of the trial court, which had the following colloquy with Petitioner:

> THE COURT: Sir, do you understand that you are charged in count one with criminal sexual conduct first degree which carries a maximum sentence of up to life in prison? And you are also charged with being a second offender in this so there's a five year mandatory sentence. And count two, criminal sexual conduct second degree 15 years maximum. And you are being prosecuted as a habitual offender second offense so that the penalty is now one and a half times the maximum sentence on the primary offense or less[er] term. And that you are pleading guilty to one count that's count one, criminal sexual conduct first degree which carries a

|  |  |
|---|---|
| | maximum sentence of up to life in prison. Do you understand that? |
| PETITIONER: | Yes, sir. |
| THE COURT: | Is anyone pressuring or threatening you or forcing you to do this? |
| PETITIONER: | No. |
| THE COURT: | Are you doing this freely [and] voluntarily? |
| PETITIONER: | Yes, sir. |
| THE COURT: | Product of your own free choice? |
| PETITIONER: | Yes, sir. |
| THE COURT: | You thought this out? |
| PETITIONER: | Yes, sir. |
| THE COURT: | Are you on probation or parole? |
| PETITIONER: | No, sir. |
| THE COURT: | Do you understand that when you plead guilty it does result in a conviction and that you are giving up several constitutional rights? |
| PETITIONER: | Yes, sir. |
| THE COURT. | Do you understand that [you] are giving up your right to a jury trial or a trial by the Court? |
| PETITIONER: | Yes, sir. |
| THE COURT: | Do you understand that you are giving up your right to be proven innocent until proven guilty beyond a reasonable doubt? |
| PETITIONER: | Yes sir. |
| THE COURT: | Do you understand that you are giving up your right to hear and question witnesses against you? |

| | |
|---|---|
| PETITIONER: | Yes, sir. |
| THE COURT: | As well as the right to have the Court compel witnesses to come to Court and testify for you? |
| PETITIONER: | Yes, sir. |
| THE COURT: | Do you understand that you are giving up your right to remain silent or to testify at [your] own trial if you chose to do so, and if you decide to remain silent that there can be no adverse inferences drawn against you by either a Judge or a jury? |
| PETITIONER: | Yes, sir. |
| THE COURT: | Do you also understand that you are giving up your right to claim that this plea was the result of promises or threats not disclosed to this Court or that it was not your decision to plead guilty? |
| PETITIONER: | Yes, sir. |
| THE COURT: | And, finally, you are giving up your right to appeal this conviction and sentence? |
| PETITIONER: | Yes, sir. |

Petitioner then admitted that he penetrated his 14-year-old stepdaughter with his "little finger" and did so "for sexual pleasure." The prosecution noted that count one of the information was a charge of criminal sexual conduct for "penis in genital opening" rather than "finger in genital opening." The parties agreed to amend the information accordingly. And the court accepted the guilty plea.

**B**

A presentence report was prepared. It calculated Petitioner's minimum guidelines range to be 42–87 months.

At the sentencing hearing (before Judge Strong), the prosecutor informed the court that "the guidelines are not exactly correct but I don't know that this matters very much since we

have a sentence agreement." Petitioner's counsel then remarked that he and the prosecutor discussed the errors in the presentence report's computation and agreed to "the sentence within the terms of the agreement." Petitioner's counsel further noted that he had "no additions or corrections to bring to the Court's attention and we'd ask that the Court sentence within the terms of the sentence agreement."

The court inquired as to how the guidelines were incorrectly scored. The prosecution explained that the presentence report incorrectly calculated the points assigned for two prior convictions. Petitioner's "prior record variable" (PRV) 1 should have been scored at 25 points for a prior, criminal sexual conduct conviction (for penetration against a person between age 13 and 15).[1] And the PRV 2 should have been scored for a felony conviction of fleeing and eluding. The prosecutor also argued that Offense Variable 13 should have been scored at 25 points. Instead of a guidelines range of 42–87 months, the prosecutor asserted, Petitioner's correct minimum sentencing guidelines range was 81–168 months.

The trial court implicitly agreed, explaining that it had "reviewed the presentence report prepared in this case" and that "the sentence agreement is reasonable and the Court will sentence accordingly." The court sentenced Petitioner to a term of imprisonment of 10–25 years.

C

Petitioner then retained new counsel, who filed a motion in the trial court to withdraw the plea based on ineffective assistance of counsel.

A hearing was held on January 25, 2008 (again, the hearing was held before Judge Strong). At the hearing, Petitioner's new counsel first argued that Petitioner's former counsel

---

[1] The presentence investigation report noted that Petitioner had a prior criminal sexual conduct conviction.

was ineffective because the correct minimum sentencing guidelines range was 42–70 months, reasoning:

> [T]here's no discussion on the record that it is over the guidelines, until you get to sentencing when the prosecutor is offering changes to the guidelines in order to make it a guidelines sentence. The Court, on the record, did not adopt any of those. And I would submit that they are wrong.
>
> At sentencing, the prosecutor argued that prior record variable one should be scored for a prior CSC conviction. However, that was more than ten years ago that he was dismissed and discharged from that, a ten-year gap. And 777.50(1) provides that in scoring the prior record variables you can't score anything that precedes a ten-year gap. So, that was improper. . . .
>
> There's also an argument regarding a fleeing and eluding. There's no reference to any fleeing and eluding charge in the presentence report. So, I don't think that would be appropriate.

Consequently, counsel continued, the plea agreement was illusory because the sentence was "far above those guidelines," elaborating:

> He received nothing for this plea bargain. There's nothing given to him in order to get him to agree to a higher than guideline sentence. There's no higher charge that was dismissed. The plea bargain is illusory to the extent that it is a bargain.
>
> There's nothing in the record indicating to him at the time of the plea that his plea was to a sentence above the guidelines. And clearly he was prejudiced by his counsel's failure to inform him of that or raise it on the record because he is serving a higher sentence than he should have under our guidelines.

The prosecution disagreed, countering: "This is the agreement that they reached. And I think that the scoring as reflected here and as the sentence is in fact proper." Moreover, the prosecution continued, even if the sentence was above the guidelines the plea agreement was not illusory. On this latter point, he explained to the court:

> Here, there's a clear reason why you would have gone above the guidelines. Because he has this prior CSC against a young person, which was what the other charge was, which was just beyond the ten years, which could have been another reason to depart from the guidelines, as a verifiable and objective reason for the departure. . . .

-7-

> [T]here's a real and objective and verifiable reason for going above [the guidelines' range] because he has exactly the same type of conviction that falls just outside the time limit here. That would seem to be a pretty big indication of something that you might want to do, that not only has he done this before, but he did it again. And it's against a small child.
>
> And so I that that [sic], you know, that's not taking to account nobody says that as of that time, but obviously if we go to trial, we have this. He's convicted as charged of all the counts. My God. . . . It's the exact same type of activity here, which he did a prison term and this, as far as I remember, at least from the plea and the preliminary examination, this was a continuing sort of thing against a child. I think it was the same household, as I remember.
>
> And its just the sort of thing that you would take into account if you were sentencing him after a trial and looking at those guidelines. . . . You might substantially go even higher than that, you know, having listened to everything, having been convicted of three or four counts of this.

The prosecution also noted that the plea agreement was not illusory because Petitioner received a dismissal of charges against him, observing: "there [were] allegations not only, you know, intercourse, but digital penetration, which is what he eventually pled to. And because of that, I think he should be held to his bargain."

The trial court noted Petitioner was a 38-year-old who had experience with the criminal justice system. (In fact, he had previously been convicted of criminal sexual conduct, the crime he chose to plead guilty to.) The court rejected Petitioner's argument "that he was basically tricked into pleading guilty on the day of trial" and denied the motion to withdraw the plea "[f]or the reasons that the prosecutor's given."

**D**

Petitioner filed an application for leave to appeal the trial court's decision with the Michigan Court of Appeals. His application raised two claims: (1) the trial court erred in denying his motion to withdraw his plea, and (2) the trial court should have corrected the error in

the plea proceeding by granting his motion to be resentenced. The Court of Appeals denied the application in a standard order. *People v. Carter*, No. 286188 (Mich. Ct. App. Aug. 12, 2008).

Petitioner filed an application for leave to appeal with the Michigan Supreme Court. The Michigan Supreme Court denied the application, also in a standard order. *People v. Carter*, 769 N.W.2d 680 (Mich. 2009) (unpublished table decision).

Petitioner then filed this habeas petition, raising the same claims that he had asserted in state court.

## II

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which governs this case, permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21(2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) ("The court gives complete deference to state court findings of historical fact unless they are clearly erroneous.").

III

A

Petitioner first asserts that his plea was not voluntarily and intelligently made because of the ineffective assistance of counsel. Specifically, his trial counsel did inform him that in the plea agreement he was agreeing to a term of imprisonment that exceeded the state sentencing guidelines. The threshold question is thus whether the plea agreement does in fact contain term of imprisonment that exceeded the applicable state sentencing guidelines. Before taking this question up, however, principles regarding the validity of guilty pleas are reviewed.

1

In general, the test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). For a guilty plea to be valid, the defendant must be "aware of the direct consequences of the plea." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). This includes the "actual value of any commitments made to him by the court, prosecutor, or his own counsel." *Brady v. United States*, 397 U.S. 742, 755 (1970).

Likewise, "for a defendant's plea of guilty to be voluntary, the defendant must be aware of the maximum sentence that could be imposed." *King*, 17 F.3d at 154 (citing *Hart v. Marion Corr. Inst.*, 927 F.2d 256, 259 (6th Cir. 1991)). "Additionally," the Sixth Circuit cautions, "the defendant must be informed about any mandatory minimum sentences, which may impact the defendant's decision to plead guilty." *Boyd v. Yukins*, 99 F. App'x 699, 703 (6th Cir. 2004) (collecting cases).

This does not require that the defendant have perfect information. "A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted

that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." *Brady*, 397 U.S. at 757.

Finally, "A defendant's statements on the record during a plea colloquy that he or she understands the nature and the consequences of the plea provide strong evidence that a plea was intelligent and knowing." *Boyd*, 99 F. App'x at 703.

Here, as noted, at the plea hearing the following colloquy took place between the trial court and Petitioner:

> THE COURT: Sir, do you understand that you are charged in count one with criminal sexual conduct first degree which carries a maximum sentence of up to life in prison? And you are also charged with being a second offender in this so there's a five year mandatory sentence. And count two, criminal sexual conduct second degree 15 years maximum. And you are being prosecuted as a habitual offender second offense so that the penalty is now one and a half times the maximum sentence on the primary offense or less[er] term. And that you are pleading guilty to one count that's count one, criminal sexual conduct first degree which carries a maximum sentence of up to life in prison. Do you understand that?
>
> PETITIONER: Yes, sir.
>
> THE COURT: Is anyone pressuring or threatening you or forcing you to do this?
>
> PETITIONER: No.
>
> THE COURT: Are you doing this freely [and] voluntarily?
>
> PETITIONER: Yes, sir.
>
> THE COURT: Product of your own free choice?
>
> PETITIONER: Yes, sir.
>
> THE COURT: You thought this out?
>
> PETITIONER: Yes, sir.

This transcript shows that Petitioner was aware that the maximum sentence he faced. He was aware of the mandatory minimum sentence he faced. And Petitioner not only acknowledged that he had "thought . . . out" his decision, but also that his plea was offered freely and voluntarily.

**2**

At the sentencing hearing, the parties acknowledged that there was some disagreement about what the applicable guidelines range was. The prosecution asserted that the presentence report's range of 42–87 months was incorrect; the correct range was 81–168 months.

The court implicitly agreed, explaining that it had "reviewed the presentence report prepared in this case" and that "the sentence agreement is reasonable and the Court will sentence accordingly." And after Petitioner moved to set aside his guilty plea, the court made its agreement with the prosecution's guidelines calculation express.

Petitioner's actual minimum guidelines range, the trial court thus concluded, was 81–168 months. The minimum sentence imposed, 120 months, fits neatly within the middle of that range. Petitioner's plea was not involuntary or unintelligent; rather, the range that he relies on is inapplicable.

In passing it should be noted that even if the trial court erred in concluding that the minimum sentencing range was 81–168 months (rather than 42–87 months), this error is not cognizable in a federal habeas corpus proceeding. *E.g.*, *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines . . . is a matter of state concern only."); *see also Garcia–Dorantes v. Warren*, 769 F. Supp. 2d 1092, 1112 (E.D. Mich. 2011) (Lawson, J.) ("The petitioner's argument that the trial court erred in applying the state sentencing guidelines raises an issue of state law only. It does not implicate

any federal rights."); *see generally Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law.").

The foundation of Petitioner's argument, as noted, is that because he did not know that he was agreeing to a term of imprisonment that exceeded the applicable guidelines range his plea was not voluntarily and intelligently made. Because his premise is unfounded, his conclusion lacks merit.

### 3

Consequently, Petitioner's ineffective assistance of counsel claim lacks merit as well. To again review general principles, when a guilty plea is challenged on the basis of ineffective assistance of counsel, a court applies the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Id*. at 687.

Here, regarding the performance prong, Petitioner writes that counsel "never explained to me that the sentence agreement was in excess of my guidelines." Pet'r's Aff. ¶ 4. Regarding the prejudice prong, Petitioner writes that "I would not have entered a plea if I had known my guidelines were much lower than the agreement." *Id*. ¶ 6.

What Petitioner means, of course, is that his plea agreement exceeds the guidelines range contained in the presentence report. This is the guidelines range that Petitioner wants to be sentenced within. It is not, however, the guidelines range that the prosecution put forward and the trial court adopted. Consequently, Petitioner has not established either of the *Strickland* prongs.

To elaborate, counsel's performance was not deficient — the plea agreement did not exceed the minimum guidelines sentencing range. As noted, Petitioner's actual minimum

guidelines range was 81–168 months, the trial court concluded. The correctness of that conclusion is not cognizable on habeas review. *E.g.*, *Howard*, 76 F. App'x at 53.

The minimum sentence imposed, 120 months, falls squarely within the middle of Petitioner's actual minimum guidelines range. This, presumably was why trial counsel remarked at the sentencing hearing that he and the prosecutor discussed the errors in the presentence report's computation and agreed to "the sentence within the terms of the agreement." Petitioner's counsel further noted that he had "no additions or corrections to bring to the Court's attention and we'd ask that the Court sentence within the terms of the sentence agreement." Whatever the case, counsel was under no obligation to inform Petitioner that an incorrectly calculated guidelines range was lower than the range contained in the plea agreement. Petitioner has not demonstrated that his trial counsel's performance was deficient.

Nor has Petitioner demonstrated prejudice. He asserts that he would not have tendered the plea if he had known that "the guidelines were much lower than the agreement." Pet'r's Aff. ¶ 6. The corollary is, presumably, that he would have tendered the plea if the recommended guidelines sentence was the same as the agreement.

And, as detailed above, the applicable minimum guidelines range was not much lower than the plea agreement's range. The midpoint of the minimum guidelines range was 124.5 months. Petitioner's minimum sentence was 120 months. He has not demonstrated prejudice.

**B**

In his second habeas claim, Petitioner "requests, as he did in state court, that he be resentenced to a guideline sentence, according to properly scored guidelines." He also reiterates that "[t]he plea and sentence agreement was the end result of ineffective assistance of counsel."

As noted, a state court's alleged misinterpretation of state sentencing guidelines is not a cognizable basis for habeas relief. *E.g.*, *Howard*, 76 F. App'x at 53. And, for reasons discussed above, Petitioner's counsel was not ineffective. Habeas relief therefore is not warranted on this claim either.

## C

Finally, Petitioner argues that he is entitled to an evidentiary hearing "to properly develop the facts necessary to resolve the ineffective assistance claim."

Section 2254(e)(2) provides that " the court shall not hold an evidentiary hearing on the claim unless the applicant shows that: (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or if there is (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2) (formatting omitted).

Here, none of the exceptions to the general rule that a court shall not hold an evidentiary hearing apply. Petitioner's claims rely on established rules of constitutional law. Petitioner puts forward are no factual issues that could not have been previously discovered by due diligence. And the facts underlying Petitioner's claims are insufficient to establish that no rational fact finder would have found him guilty of the crime.

## IV

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1) (a); Fed. R. App. P. 22(b). A certificate of

appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37.

Petitioner has not made a substantial showing of the denial of a constitutional right, and thus, a certificate of appealability is not warranted.

## IV

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus (ECF No. 1) is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that leave to proceed in forma pauperis **DECLINED**.

s/Thomas L. Ludington<br>
THOMAS L. LUDINGTON<br>
United States District Judge

Dated: May 30, 2013

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 30, 2013.
    s/Tracy A. Jacobs
    TRACY A. JACOBS